IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| COACHCOMM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-743-RAH |
| | ) | [WO] |
| WESTCOM WIRELESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff CoachComm, LLC (located in Alabama) filed this suit against Defendant Westcom Wireless, Inc. (located in Pennsylvania) concerning the marketing, advertising, sales, and technology associated with their respective headset communication devices that each company sells to football coaching staffs throughout the country. CoachComm alleges that Westcom has engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125 (Counts IV and VI); false marking under 35 U.S.C. § 292 (Count III); and bad faith patent assertion under Ala. Code § 8-12A-1 (Count V). CoachComm also brings declaratory judgment

claims for non-infringement and patent invalidity under the Patent Act, 35 U.S.C. § 1, et seq. (Counts I and II).[1]

Westcom has filed a *Renewed Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer.* (Doc. 32.) The motion has been fully briefed, and the parties have been afforded the opportunity to conduct limited discovery on the issues raised in the motion. For good cause, the Court concludes that it does not have personal jurisdiction over Westcom for the patent enforcement-related claims (Counts I, II, and V), but that it does have jurisdiction over Westcom for the false advertising claims (Counts III, IV, and VI). And as to the false advertising claims over which the Court has personal jurisdiction, Westcom's request to transfer venue of those claims to the Western District of Pennsylvania is due to be denied.[2] Accordingly, Westcom's motion is due to be granted in part and denied in part.

---

[1] The parties currently are engaged in related litigation in the Western District of Pennsylvania, where Westcom brought a claim of false advertising against CoachComm. *Westcom Wireless, Inc. v. CoachComm, LLC*, No. 2:22-cv-0037-MRH (W.D. Pa.). That litigation is currently stayed, pending this Court's decision as to Westcom's pending *Renewed Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer* (Doc. 32).

[2] Westcom additionally filed a *Motion for Leave to File a Sur-Rebuttal to CoachComm's Sur-Reply*, attaching its proposed brief and three new supporting exhibits. (Doc. 45.) CoachComm opposes this motion. (Doc. 47.) The Court finds that the arguments and evidence presented do not alter the Court's adjudication of the underlying motion to dismiss, and accordingly, the motion is due to be denied as moot.

## II.  STANDARD OF REVIEW

A Rule 12(b)(2) motion challenges the court's exercise of personal jurisdiction over a defendant.  *See* Fed. R. Civ. P. 12(b)(2).  When the court does not conduct a discretionary evidentiary hearing on a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction over the nonresident defendant.  *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  "A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict."  *Id.* (citation omitted).  When the parties produce conflicting evidence as to the issue of personal jurisdiction, "the court must construe all reasonable inferences in favor of the plaintiff."  *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

As to motions to transfer venue, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).  However, the district court has "broad discretion in weighing the conflicting arguments as to venue."  *England v. ITT*

*Thompson Indus. Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).  Courts must engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

## III.  BACKGROUND

CoachComm and Westcom make and sell competing headset communication devices for use in the football industry.  Westcom is a small outfit, based in Lower Burrell, Pennsylvania, while CoachComm is the predominate and long-term player in the market, based in Auburn, Alabama.

### A. Westcom's Headset Product

Sometime in 2017 or 2018, Westcom entered the headset market with its ProCom line of headsets.  Since releasing its ProCom headsets, Westcom has engaged in extensive marketing of its ProCom products throughout the country, including Alabama.  (*See* Doc. 36-1 at 32–34; Doc. 36-2 at 34.) As a result of its marketing efforts, as of November 2021, Westcom has sold its ProCom products to 51 Alabama-based customers and issued 196 quotes to more than 100 Alabama schools.  (Doc. 36-2 at 46, 53–59; Doc. 36-45; Doc. 36-46.)

These quotes and resulting purchases have resulted from a host of marketing activities that, according to CoachComm, have contained false and misleading information about Westcom's ProCom products, such as false information about the ProCom headsets' patent status and output power, as well as false and misleading

4

information about CoachComm's competing headset products.  (*See* Doc. 1 at 9–20; *see*, *e.g.*, Doc. 35-14; Doc. 36-6; Doc. 36-32.)  For example, in April 2021, Westcom sent a solicitation email to Jacksonville State University, one of CoachComm's established customers, asserting that "[w]ith our patent, [Westcom is] the only company that can provide a single headset that can perform Coach to Coach and Coach to Player communications." (Doc. 36-1 at 48–49; Doc. 36-30.)  According to CoachComm, the problem with this statement is that Westcom's headset was not patented, nor was it the only headset product that could perform person-to-person communications.

As part of its marketing campaign directed to and within Alabama, aside from marketing its products on its website, Westcom employed a regional sales representative based in Georgia who actively engaged in one-on-one communications with potential purchasers (i.e., football coaches) via telephone and email and who personally attended coaching clinics in Alabama in 2019 and 2021, where marketing materials were handed out and also later distributed based on contacts generated from the clinics.  (Doc. 36-1 at 34–35, 228; Doc. 36-2 at 43–45; Doc. 36-3 at 244, 248–49; *see, e.g.*, Doc. 36-3 at 132–47, 159–70, 175–90; Doc. 36-18; Doc. 36-22; Doc. 36-39.)  The sales representative also posted to Twitter notices about the Alabama schools purchasing Westcom's headset products.  (*See, e.g.*, Doc. 35-52.)   Westcom has also sent out blast emails including the marketing materials

at issue to Alabama schools in an effort to solicit purchases from Alabama customers.  (Doc. 36-2 at 80–84, 88–92, 151–56, 160–64.)

### B. Westcom's Patent

In December 2020, Westcom submitted a patent application for a headset communication system (Application No. 17/120,432), which was published on April 1, 2021.  (Doc. 1 at 4–5.)  This application was ultimately issued as U.S. Patent No. 11,165,551 (551 Patent) on November 2, 2021.  (Doc. 1 at 5.)

While its application was still pending before the U.S. Patent Office, Westcom's legal counsel sent CoachComm a letter on January 26, 2021 accusing CoachComm of patent infringement of the technology in Westcom's headsets. (Doc. 35-62.)  Westcom demanded that CoachComm cease importing and selling certain headset products and threatened litigation if it did not.  (*Id.*)  CoachComm did not do so.  This lawsuit, as well as one filed by Westcom in the Western District of Pennsylvania, followed.

### C. Procedural History

CoachComm filed this action in the Middle District of Alabama on November 1, 2021.  In Count I, CoachComm seeks a declaratory judgment of *non-infringement* under the Patent Act, 35 U.S.C. § 1 *et seq*., that its headset products do not infringe any valid and enforceable claim of Westcom's 551 patent.  In Count II, CoachComm seeks a declaratory judgment of *invalidity* as to Westcom's 551 patent

under the Patent Act.  In Counts III and IV, CoachComm asserts that Westcom is liable for false marking under 35 U.S.C. § 292 and false advertising under Section 43 of the Lanham Act, 15 U.S.C. § 1125, by advertising its ProCom X12 products as "patented" when in fact they were not.  In Count V, CoachComm asserts that Westcom has made a bad faith patent assertion in violation of Ala. Code § 8-12A-1, *et seq.*  And in Count VI, CoachComm asserts that Westcom is liable for false advertising under Section 43 of the Lanham Act for making false and misleading statements about both CoachComm's and Westcom's headset products.

Westcom initially filed a *Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer* which asserted a host of grounds for dismissal or transfer of this action.  (Doc. 19.)   In response, CoachComm moved for leave to conduct jurisdictional discovery. (Doc. 22.) The Court denied Westcom's *Motion to Dismiss* (Doc. 19) without prejudice and granted CoachComm's motion for leave to conduct jurisdictional discovery.  (Doc. 24.)  The Court also directed Westcom to limit its renewed motion to dismiss to the issues of specific personal jurisdiction and transfer of venue.  (*Id.* at 3.)  This motion followed.

## IV.  DISCUSSION

Westcom seeks dismissal of CoachComm's claims, arguing this Court lacks personal jurisdiction over Westcom.  In the alternative, Westcom argues for transfer

of this case to the Western District of Pennsylvania.  The Court will first consider the personal jurisdiction issue, and then the transfer issue.

## A. Personal Jurisdiction

 "[W]here the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,'" the courts must apply Federal Circuit law. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (citation omitted); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998) (courts must apply Federal Circuit law when determining "personal jurisdiction in declaratory judgment actions that involve patentees as defendants"). Under both Eleventh Circuit and Federal Circuit precedent, a court must pursue a two-step inquiry in determining whether it has personal jurisdiction over a defendant in a particular matter.  *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023); *Red Wing Shoe*, 148 F.3d at 1358.

The first inquiry is "whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citing *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996)); *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152 (Fed. Cir. 2021).  Under the second inquiry, a court must assess "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which

requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"   *Mut. Serv. Ins. Co.*, 358 F.3d at 1319 (citation omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Trimble*, 997 F.3d at 1152–53.   Since Alabama's long-arm statute confers jurisdiction of Alabama courts to the full extent such jurisdiction is constitutionally permissible, these two inquiries collapse into one: that is, whether the exercise of jurisdiction would satisfy the requirements of due process.   *Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992).

A court may exercise specific jurisdiction over a defendant when the claim arises from or relates to conduct purposely directed at a forum state, or a court may exercise general jurisdiction over a defendant that has maintained systematic and continuous contacts with the forum state.   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986).   Since neither party raises the issue of general jurisdiction, the Court will focus on whether specific jurisdiction exists.

When determining whether to exercise specific jurisdiction over a defendant, courts must pursue a three-step inquiry to determine (1) whether the claims "'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2)

9

whether the defendant "'purposefully availed' [it]self of the privilege of conducting activities within the forum state"; and (3) "whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *SkyHop Techs.*, 58 F.4th at 1229 (citation omitted); *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).  The plaintiff bears the burden on the first two elements, while the defendant bears the burden on the third element.  *SkyHop Techs.*, 58 F.4th at 1229  (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)); *see also Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006).

Before jumping into the jurisdictional abyss presented by this case, the Court must first determine whether any of the claims asserted here are related because "[s]pecific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit."  *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (citing *Cronin v. Wash. Nat. Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)).  "[A] 'district court ha[s] personal jurisdiction over the entire case' when 'all of the claims ar[i]se from the same jurisdiction generating event.'" *SkyHop Techs.*, 58 F.4th at 1231 (second and third alteration in original) (quoting *Cronin*, 980 F.2d at 671 & n.10).  Supplemental jurisdiction may allow a court's exercise of personal jurisdiction over one claim to extend to another, but only if the claims arise

out of "a common nucleus of operative fact." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003) (citation omitted).

Westcom argues that Counts III and IV arise out of the same operative facts—Westcom's advertising and marketing actions—while Counts I, II, V and VI each arise from different sets of operative facts. CoachComm, meanwhile, generally argues that Counts I, II, and V all arise directly from Westcom's January 2021 letter, while Counts III, IV, and VI are all related to Westcom's allegedly false advertising and marketing efforts. The Court finds that Counts III and IV should be considered together for purposes of the personal jurisdiction analysis, as they each address a broad sweep of Westcom's advertising activities, and that Counts I and II should be considered together, as they arise out of Westcom's patent enforcement rights as asserted in its January 26, 2021 letter. As to Count V, the Court finds that it should be considered alongside Counts I and II because Count V also directly implicates the patent assertion made in Westcom's January 26, 2021 letter. And finally, while some of the specific relevant facts are different, the Court concludes that Count VI should be considered alongside Counts III and IV, even though Count VI arguably must be considered under applicable Eleventh Circuit law rather than Federal Circuit law, as it too arises out of Westcom's advertising activities.

1.    **The False Advertising Claims (Counts III, IV, and VI)**

Westcom asserts that its contacts with Alabama are insufficient for this Court to exercise specific personal jurisdiction for Counts III, IV, and VI because Westcom's marketing activity in Alabama was no more prolific than in other states.[3] CoachComm argues that Westcom engaged in extensive advertising activities directly targeting Alabama customers through, for example, direct one-to-one communications via telephone, email, and in-person visits—so much so that Westcom successfully solicited direct sales with numerous Alabama customers.

Under the first step of the specific jurisdiction inquiry—whether CoachComm's claims "arise out of or relate to" one of Westcom's contacts with Alabama—the Court focuses on whether there is "a strong 'relationship among the defendant, the forum, and the litigation.'" *SkyHop Techs. Inc.*, 58 F.4th at 1229 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1029)). Generally, such a relationship is established through "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Ford Motor Co.*, 141 S. Ct. at 1025).

---

[3] In its reply brief and sur-rebuttal, Westcom argues that CoachComm is unable to state a claim for relief as to CoachComm's false advertising claims. Since Westcom's pending motion does not provide sufficient argument as to this contention for the Court to fully engage with this assertion, and in any event, since the Court directed Westcom to only address the issues of specific personal jurisdiction and the transfer of venue in the pending motion (*see* Doc. 24 at 3), the Court will not address this argument at this stage.

As to the purposeful availment prong, a plaintiff "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). The Supreme Court has suggested that merely placing a product into the stream of commerce is not enough to subject a defendant to personal jurisdiction in a given state, but that additional conduct suggesting "an intent to serve the market in the forum State" may well establish sufficient minimum contact. *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1547 (11th Cir. 1993) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Calif.,* 480 U.S. 102, 107 (1987) (plurality opinion)).

CoachComm's claims in Counts III, IV, and VI challenge Westcom's advertising activities specifically directed at Alabama, which show purposeful availment of Alabama's market for coaching headsets, therefore establishing the requisite minimum contacts required for personal jurisdiction.[4]   Among others,

---

[4] Because the Court finds that Westcom had sufficient contacts to justify specific personal jurisdiction in this matter, the Court need not and will not address Westcom's arguments against personal jurisdiction as arising under the "effects" test. *See Louis Vuitton Malletier*, 736 F.3d at 1357 (determining in an intentional tort case that "[b]ecause [the plaintiff] showed purposeful availment under [the traditional minimum contacts test for purposeful availment], we need not analyze the 'effects test' here").

CoachComm has submitted evidence showing that Westcom hired a sales representative whose sales territory included Alabama; mailed sales catalogs to Alabama-based coaches; had direct one-on-one communications with Alabama coaches through a variety of means including telephone, email, and personal visits; and attended coaching clinics within the state of Alabama, where Westcom utilized and distributed many of the allegedly false and misleading marketing materials at issue.

Westcom argues that it did not purposefully avail itself of the privilege of doing business in Alabama because it did not target Alabama customers any more than it did with potential customers in other states. This assertion focuses on the wrong inquiry. The proper inquiry is whether Westcom's advertising efforts were reasonably calculated to reach Alabama such as to purposely avail itself of the privilege of doing business in Alabama. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540,

---

Westcom argues that the Court must rely upon the effects test here, as the Supreme Court ruled out the use of the minimum contacts analysis for intentional-tort cases in *Walden v. Fiore*, 571 U.S. 277 (2014). (*See* Doc. 41 at 13 n.11.) The Court disagrees. The Supreme Court's analysis in *Walden* makes no claim as to whether the minimum-contacts test is ever inappropriate in an intentional-tort case. In fact, the Supreme Court appeared to categorize the effects test as a subset of the minimum-contacts test. *See Walden*, 571 U.S. at 283, 288. Ultimately, the Supreme Court merely emphasized that the crux of the specific personal jurisdiction analysis is whether there is a connection between the parties, the matter at issue, and the forum, while explicitly permitting the minimum-contacts analysis to be used in intentional tort cases. *Id.* at 291 ("The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" (cleaned up) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)). All *Walden* clarified is that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* As the analysis in this section demonstrates, CoachComm has shown here that it was indeed Westcom who created the relevant contacts with Alabama.

1545 (11th Cir. 1997) ("It is well settled that advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum.").  As CoachComm correctly points out, Westcom's use of direct mailers (catalogs), its instigation of and participation in direct one-on-one communications with Alabama-based customers, and its participation in coaching clinics in Alabama, all for the purpose of marketing its headset products, shows that Westcom intentionally targeted Alabama customers and therefore purposely availed itself of the privilege of doing business here.  *See id.* at 1546 ("It has . . . long been held that direct mailings of solicitation materials to the forum may provide a basis for personal jurisdiction."  (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221–24 (1957))).

Westcom cites to a Western District of Tennessee district court decision to argue that "targeted marketing emails [that] are sent to residents of a forum state are not sufficient standing alone to establish purposeful availment."  (Doc. 33 at 19 (citing *Odyssey Med., Inc. v. Augen Opticos, S.A. de C.V.*, No. 10-2797, 2011 WL 4478873, *1, *8 (W.D. Tenn. Sept. 26, 2011)).  But *Odyssey Medical* is factually different, as the emails at issue in that case derived from a general, nationwide mass mailing campaign.  2011 WL 4478873, at *8.  Here, by contrast, Westcom's sales representative drafted tailored communications to send to potential customers in Alabama and engaged in direct one-on-one communications with these individuals,

15

often including in-person consultations and additional email correspondence, all for the purposes of making sales in Alabama.[5]  As such, the record sufficiently shows that Westcom intended to serve the headset market in Alabama using materials that contained allegedly false and misleading statements challenged by CoachComm. Accordingly, CoachComm has met its burden on the first two elements of the specific jurisdiction analysis.

But that is not the end, as Westcom bears the burden of showing that exercising jurisdiction over CoachComm's advertising claims would violate notions of fair play and substantial justice.  *See SkyHop Techs.*, 58 F.4th at 1229; *Breckenridge Pharm.*, 444 F.3d at 1362.  As to this prong, courts must consider "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'"  *Del Valle v. Trivago GMBH*,

---

[5] Relatedly, Westcom's additional reliance on *Brainstorm XX, LLC v. Wierman*, No. 4:21-CV-584-SDJ, 2022 WL 4387858 (E.D. Tex. Sept. 22, 2022), and *Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948 (8th Cir. 2022), is unpersuasive as those cases are distinguishable. *Wierman* merely involved the sale of two products in the forum state through the use of a publicly accessible webpage, 2022 WL 4387858, at *1, and *Zazzle* involved one single sale and exchange concerning an underlying trademark dispute, 42 F.4th at 950–51.  But here, the alleged facts concern multiple sales and extensive one-on-one communications in Alabama based upon materials allegedly falsely marking and advertising Westcom's products.

Westcom also raises several arguments concerning whether its website and its use of its Twitter account may count towards the minimum contacts necessary to establish personal jurisdiction over these claims.  Addressing these arguments is unnecessary, as CoachComm has otherwise met its burden to show minimum contacts sufficient to permit personal jurisdiction over the false advertising claims.

56 F.4th 1265, 1277 (11th Cir. 2022) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

As to the false advertising claims lodged against it, Westcom's only argument concerning this inquiry is that it would face a disproportionate burden in litigating the case in Alabama since it only has 14 employees and earns far less revenue when compared to CoachComm, the alleged market-leader for headsets. But as the Eleventh Circuit has recognized, "modern methods of transportation and communication have significantly ameliorated" the burden of litigating in a foreign state. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996); s*ee also Morris v. SSE, Inc.*, 843 F.2d 489, 495 (11th Cir. 1988) (stating that the defendant should not have assumed the risk of potentially causing harm in Alabama if it deemed litigation there to be too burdensome). Given modern technologies and ease of transportation, and the efforts that Westcom has made to send at least one company representative to Alabama, Westcom will not face an unduly disproportionate burden in litigating this limited set of advertising-related claims here.

Accordingly, Westcom's motion to dismiss the advertising-related claims (Counts III, IV, and VI) on personal jurisdiction grounds is due to be denied.

**2.     The Patent Enforcement Claims (Counts I, II, and V)**

The patent-enforcement related claims are a different matter, as they all relate to the January 21, 2021 letter sent by Westcom's legal counsel to CoachComm. Westcom argues that personal jurisdiction cannot be based on this one letter because to do so would violate Westcom's due process rights. The Court agrees with Westcom.

Generally, a single letter asserting patent rights is insufficient to establish specific personal jurisdiction for claims dependent on a patent assertion.[6] *Compare Red Wing Shoe*, 148 F.3d at 1360–61 (holding that three cease-and-desist letters were insufficient to establish personal jurisdiction), *with Trimble*, 997 F.3d at 1156–57 (defendant's contacts with the forum state—including "twenty-two communications over the course of about three months"—were sufficient minimum contacts for personal jurisdiction). "While the act of sending cease and desist letters is in-sufficient by itself to trigger a finding of personal jurisdiction, other activities by the defendant, in conjunction with cease and desist letters, may be sufficient."

---

[6] The parties dispute the nature of this letter as a matter of law, especially since the patent application cited in the letter had not yet been approved when the letter was sent. For purposes of this motion, the Court will label this letter as a cease-and-desist letter. The Court takes no position at this stage on the legal impact of the letter itself, and solely cites the letter for purposes of analyzing personal jurisdiction. The Court further finds no reason to determine the substantive legal effect of this letter for purposes of the personal jurisdiction analysis, as the important element of the letter is that it prompted CoachComm to explore its options to protect itself from liability for patent infringement.

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017). Such additional activities may include, for example, (1) "hiring an attorney or patent agent in the forum state to prosecute a patent application that leads to the asserted patent"; (2) "physically entering the forum to demonstrate the technology underlying the patent to the eventual plaintiff, or to discuss infringement contentions with the eventual plaintiff"; (3) "the presence of 'an exclusive licensee . . . doing business in the forum state'"; and (4) "'extra-judicial patent enforcement' targeting business activities in the forum state, among others." *Trimble*, 997 F.3d at 1155–56 (citations omitted). However, "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 566 F.3d at 1020 (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008)).

As an initial matter, the Court must address whether the claims reflected in Counts I, II, and V arise out of or relate to Westcom's contacts with Alabama, and whether those claims are sufficient for establishing jurisdiction over Westcom. *See Trimble*, 997 F.3d at 1153–56. There is little doubt that Counts I, II, and V primarily relate to Westcom's actions in sending the January 21, 2021 letter to CoachComm's headquarters in Auburn, Alabama. As the Federal Circuit has established, a cease-and-desist letter itself is a contact that both relates to the underlying declaratory

judgment and gives rise to the underlying lawsuit. *See New World Int'l*, 859 F.3d at 1037; *Red Wing Shoe*, 148 F.3d at 1360. Additionally, CoachComm argues that the marketing materials at issue also relate to these three claims, as these materials falsely assert that Westcom's ProCom products are patented. The Court disagrees. The marketing materials at issue are unrelated to Westcom's attempts to enforce or defend its patent against CoachComm. Rather, these materials are merely commercialization efforts to sell its product to Alabama-based customers, which cannot support the Court's finding of jurisdiction over the patent enforcement claims. *See Autogenomics,* 566 F.3d at 1020. As such, the personal jurisdiction inquiry here necessarily is limited to the January 21, 2021 letter.

Aside from the letter, CoachComm provides no evidence that Westcom has hired an attorney or patent agent in Alabama to prosecute this patent action, no evidence that Westcom has traveled to Alabama to discuss the potential infringement with CoachComm, and no evidence that Westcom has an exclusive licensee within Alabama, nor has it alleged any extra-judicial patent enforcement by Westcom or any other person or entity.[7]

---

[7] CoachComm asserts that a magistrate judge in the District of Colorado found that a defendant's sales activities were relevant minimum contacts for personal jurisdiction in a declaratory action matter. (Doc. 39 at 24 (citing *Otter Prods., LLC v. Flygrip, Inc.*, No. 21-CV-03298-NYW-KLM, 2022 WL 3443688, at *7 (D. Colo. Aug. 17, 2022))). This portion of the magistrate judge's report and recommendation was rejected by the district court a few weeks after CoachComm filed this response brief. *See Otter Prods. LLC v. Flygrip, Inc.*, No. 21-CV-03298-RM-KLM, 2022 WL 17729706, at *3 (D. Colo. Dec. 16, 2022).

As to the letter, the Court finds no need to evaluate whether the letter itself is a sufficient minimum contact as Westcom has met its burden to show that exercising personal jurisdiction as to the patent-enforcement claims would violate notions of fair play and substantial justice.  In any event, the Federal Circuit has held that sending a small number of communications relating to patent enforcement alone does not justify a forum state's exercise of personal jurisdiction over the patent holder.  *See Red Wing Shoe*, 148 F.3d at 1357, 1360–61; *see also Trimble*, 997 F.3d at 1153–54 (affirming *Red Wing Shoe* on its particular facts).  Explaining its rationale and policy concerns specific to the patent law arena, the Federal Circuit has noted that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." [8]  *Red Wing Shoe*, 148 F.3d at 1360–61

Unlike *Red Wing Shoe*, where the Federal Circuit held that the defendant's mailing of three warning letters was insufficient to justify the exercise of personal jurisdiction over the underlying patent enforcement claims, here only *one* relevant communication has been sent.  And CoachComm has presented no arguments

---

[8] The Court recognizes that Westcom did not directly argue the policy concerns raised by the caselaw when addressing the fair play and substantial justice prong of the personal jurisdiction analysis.  Westcom focuses instead on the burden it would face litigating this dispute in this district and concerns that tying specific personal jurisdiction to demand or infringement notification letters could dissuade parties from engaging in settlement negotiations.  (*See* Doc. 33 at 15.)  However, given Westcom's discussion of *Red Wing Shoe* and its progeny, and given the relevance placed by the Federal Circuit on policy matters particular to patent law when adjudicating this element of the personal jurisdiction analysis, Westcom nevertheless sufficiently met its burden here.

suggesting that, on these facts, there are other factors that justify setting aside the Federal Circuit's admonition that courts should do their best not to overly dissuade patent holders from engaging in enforcement actions to protect their patents. Accordingly, the Court concludes that it does not have personal jurisdiction over the patent enforcement-related claims as reflected in Counts I, II and V, and therefore these claims are due to be dismissed without prejudice.

## B. Venue Transfer

As to the claims over which the Court does have personal jurisdiction, Westcom argues that those claims should be transferred to the Western District of Pennsylvania under 28 U.S.C. § 1404(a). Westcom has not met its burden on this issue.

Whether transfer under § 1404(a) is appropriate requires consideration of two questions: (1) "whether the action could originally have been brought in the proposed transferee district court"; and (2) "whether the balance of convenience favors transfer." *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999). Because Westcom's principal place of business is located within the Western District of Pennsylvania, CoachComm's advertising-related claims against Westcom could have been brought there. *See* 28 U.S.C. § 1391(b)(1), (c)(2). Thus, the pertinent issue is whether the convenience of the parties or the interests of justice

weigh in favor of transfer for those claims to proceed in Pennsylvania, rather than CoachComm's chosen forum in Alabama.

There is no definitive test to determine the propriety of a transfer under § 1404(a), but courts commonly consider nine factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted).[9] Considering these factors, the Court sees no basis to transfer the advertising-relating claims.

### i.    Convenience of the Witnesses

Westcom argues that the key witnesses relating to its advertising practices are based in Pennsylvania since Westcom is located there, while CoachComm would not have any relevant witnesses in Alabama.  But as CoachComm notes and the jurisdictional discovery suggests and supports, there are many potential non-party

---

[9] Even when Federal Circuit law governs the substance of a claim, the law governing motions to transfer venue are nevertheless governed by the regional circuit court governing the district court—here, that would be Eleventh Circuit law.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (analyzing a motion to transfer venue for a patent infringement action from the Eastern District of Texas under Fifth Circuit law).

witnesses who are located in Alabama or even Georgia, and for these witnesses (none of whom are directly employed by Westcom), this District would be far more convenient.  Perhaps there are more key witnesses in Pennsylvania than Alabama given the role Westcom's officials would play in a false advertising trial, but the record does not conclusively establish it.  This factor does not tilt the scales in favor of transfer.

### ii.    Location of Relevant Documents

While there may be more relevant documents in Pennsylvania than Alabama since Westcom's advertisements were created there, given modern technology and thus the ability to easily send documents, this issue does not strike the Court as worthy of any significant consideration toward Westcom.  *See Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1283 (N.D. Ga. 2015) ("Since the predominance of electronic discovery in the modern era, most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry." (collecting cases)).

### iii.   Convenience of the Parties

Conducting court proceedings in this District undoubtedly would be inconvenient to Westcom; however, conducting court proceedings in Pennsylvania undoubtedly would be inconvenient to CoachComm.  "[W]hen a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the

plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328–29 (M.D. Fla. 2010).  Furthermore, CoachComm has presented evidence showing that Westcom has at least one relevant non-employee agent based in Georgia for whom traveling to this District would be much more convenient than traveling to Pennsylvania.  The Court understands Westcom's concerns that it may have to alter its operations during a potential trial.  But Westcom has not shown with any specificity how continuing with proceedings in this District may disrupt its business operations aside from requiring personnel to travel to this District from Pennsylvania.  This factor has neutral weight.

### iv.    Relative Means of the Parties

Westcom asserts that its relative size and resources, compared to that of CoachComm, means that travel will be more burdensome for its representatives. This imbalance is not terribly relevant given the corporate status of both parties.  As a general rule, "[c]ourts do not give the parties' relative means great weight when, as is here, both parties are corporations." *Griffin Cap. Co., LLC v. Essential Props. Realty Tr., Inc.*, No. 1:18-CV-4255-MHC, 2019 WL 5586547, at *7 (N.D. Ga. Jan. 18, 2019) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)).  This factor is at best *slightly* supportive of transferring the matter.

### v.       Locus of Operative Facts

Westcom asserts that for the false advertising claims, the locus of operative facts is typically the location of the defendant.  CoachComm disagrees, asserting that many of the statements at issue here were made in Alabama.  Since the advertising materials that contained the allegedly false statements were distributed nationally by Westcom and were largely produced within the corporate offices, this factor slightly favors transfer.  *See Advantus, Corp. v. Sandpiper of Cal., Inc.*, No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725, at *34 (M.D. Fla. Sept. 30, 2019).  But there would be nothing special about bringing the case in Alabama versus any other state targeted by Westcom's advertising activities, as compared to bringing it near Westcom's principal place of business.  *See TocMail Inc. v. Microsoft Corp.*, No. 20-60416-CIV, 2020 WL 12442001, at *3 (S.D. Fla. Oct. 15, 2020) (citing *Inventel Prods. LLC v. Penn LLC*, No. 16-CV-1649(AJN), 2017 WL 818471, at *5 (S.D.N.Y. Feb. 28, 2017).

### vi.      Availability of Process to Compel Unwilling Witnesses

While the Court recognizes that the availability of process can complicate witness attendance depending on where this case proceeds, such consideration weighs against transfer because most of the necessary, non-employee witnesses over whom process is necessary (outside sales representative and football coaches), are located in Alabama and Georgia, compared to those individuals employed by

Westcom over whom Westcom has control.  *See Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001).  Additionally, neither party has asserted that compulsory process would be necessary to ensure a particular witness's presence at trial.  *See id.* at 1361–62.  This factor weighs against transfer.

### vii.    Forum's Familiarity with the Governing Law

Since this case concerns federal questions, presumably no district court has any greater advantage over another in adjudicating it, nor has either party made such an argument.

### viii.    Trial Efficiency and the Interests of Justice

As to trial efficiency, while the Middle District of Alabama may have more court congestion than the Western District of Pennsylvania, this Court is no longer classified as a judicial emergency district and is fully capable of giving this case its due and appropriate attention.   If anything, since the Western District of Pennsylvania will be considering a complex set of claims—patents associated with sophisticated electronic devices—the advertising claims, if pursued here, would not be impacted by the complexity of issues that the Pennsylvania court will have to tangle with as it concerns the patent enforcement claims.  And while Pennsylvania has an interest in ensuring that its residents have their patent rights respected, so too does Alabama.  Overall, the Court concludes that this factor weighs against transfer.

### ix.   Weight Accorded to Plaintiff's Choice of Forum

Lastly, CoachComm, as the plaintiff, has chosen this forum in which to litigate the advertising-related claims, and the harm it has allegedly suffered has been here in Alabama.  Westcom raises no arguments relevant to the false advertising claims to justify not granting this factor considerable weight, having only argued this factor to the extent that the Court would consider transfer of the declaratory action claims. This factor is entitled to substantial weight, and the Court will give this factor the weight it naturally deserves. *See Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2001) ("[A] plaintiff's choice of forum must be afforded considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides." (citing *Patel v. Howard Johnson Franchise Sys.*, 928 F. Supp. 1099, 1101 (M.D. Ala. 1996))).

In light of the above analysis, Westcom's motion to transfer the false advertising claims to the Western District of Pennsylvania is due to be denied.

### V.  CONCLUSION

Accordingly, it is ORDERED as follows:

1. Westcom's *Renewed Motion to Dismiss for Lack of Personal Jurisdiction* (Doc. 32) is GRANTED in part as to dismissal of Counts I, II, and V for lack of personal jurisdiction, and is DENIED in all other respects.

2. Westcom's *Motion to Transfer Venue* (Doc. 32) is DENIED.

28

3. Counts I, II, and V of CoachComm's Complaint (Doc. 1) are DISMISSED without prejudice.

4. Westcom's *Motion for Leave to File a Sur-Rebuttal to CoachComm's Sur-Reply* (Doc. 45) is DENIED as moot.

DONE, on this the 2nd day of May, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

29