# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| COACHCOMM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00743-RAH-KFP |
| | ) | |
| WESTCOM WIRELESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT WESTCOM WIRELESS, INC.'S
## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO
## PLAINTIFF COACHCOMM, LLC'S COMPLAINT

Defendant Westcom Wireless, Inc. ("Westcom") hereby files the following Answer, Affirmative Defenses and Counterclaim to Plaintiff CoachComm, LLC's ("CoachComm") Complaint (ECF 1).

## ANSWER

1.     Paragraph 1 contains legal conclusions to which no response is required. To the extent a response is required, it is admitted in part and denied in part.  It is admitted that the original Complaint asserted detailed claims similar to the brief description provided; the remaining characterizations and other parts of this allegation are denied.

2.     Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

3.      Admitted in part and denied in part.  It is denied that Westcom still has its principal place of business at 2921 Leechburg Road, Lower Burrell, PA; it is now located at 2773 Leechburg Road.  The remaining averments of this paragraph are admitted.

4.      Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

5.      Paragraph 5 contains legal conclusions to which no response is required. To the extent a response is required, denied, as this allegation is no longer applicable in light of the Court's rulings.

6.      Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, denied, as this allegation is no longer applicable in light of the Court's rulings.

7.      Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, denied, as this allegation is no longer applicable in light of the Court's rulings.

8.      Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, denied, subject to Westcom's recognition that the trial court has found otherwise.

9.      Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, denied, subject to Westcom's recognition that the trial court has found otherwise.

10.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

11.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

12.    Admitted in part and denied in part.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the first sentence of this allegation, and therefore denies the same. Westcom admits that, at times, CoachComm has sold products bearing those names listed in the second sentence of this allegation; the remaining parts of this allegation are denied.

13.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

14.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

15.    Admitted in part and denied in part.  Westcom admits that since 2018 it has marketed and sold headset communications systems using the ProCom brand in certain parts of the United States; the remaining parts of this allegation are denied.

16.    Admitted in part and denied in part.  Westcom no longer sells the Titan. The remaining parts of this allegation are admitted.

17.    Admitted in part and denied in part.  It is admitted that the parties have certain products in their respective lines that compete with each other; the remaining parts of this allegation are denied.

18.    Admitted in part and denied in part.  It is admitted that the cited application having the cited title and serial number was filed listing Frank Girardi as the sole inventor, on the cited day.  It is denied that this is the earliest filing date for this application or this invention, as this application claims the benefit of an earlier provisional patent application, filed on January 3, 2020, bearing number 62/956,797, and there was a prior provisional application relating to this subject matter filed on or about December 28, 2018.  It is further denied that the applicant of U.S. Patent No. 11,165,551 is Frank Girardi.  The applicant is listed on the face of the issued patent is Westcom Wireless, Inc.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted in part and denied in part.  It is admitted that on or about January 26, 2021, patent counsel for Westcom, John Powers, sent a letter to CoachComm, a copy of which was attached as Exhibit 1 to the Complaint.  It is denied that the listed parts comprise the entirety of the letter or otherwise provide full context, as the entire letter speaks for itself and other, related activities are

pertinent.  So Westcom denies the remaining parts of this allegation as a selective recitations of only certain parts of said letter.

27.    Westcom repeats and incorporates by reference herein its response to the allegations in paragraph 26 of the Complaint.

28.    Westcom repeats and incorporates by reference herein its response to the allegations in paragraph 26 of the Complaint.

29.    Westcom repeats and incorporates by reference herein its response to the allegations in paragraph 26 of the Complaint.  Westcom admits that the January 26 letter did not provide the title or number of the application, and that it did not attach the application.  The remaining allegations are denied.

30.    Admitted.

31.    Admitted in part and denied in part.  It is admitted that on March 11, 2021, CoachComm, through its counsel, sent a letter, a copy of which was attached as Exhibit 2 to the Complaint.  It is denied that the summary of the March 11 letter set forth in this allegation comprises the entirety of the letter or provides proper context, as the entire letter speaks for itself.  So Westcom denies the remaining parts of this allegation as a selective recitations of only certain parts of said letter.

32.    Westcom repeats and incorporates by reference herein its response to the allegations in paragraph 31 of the Complaint.

33.    Westcom repeats and incorporates by reference herein its response to the allegations in paragraph 31 of the Complaint.

34.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

35.    Admitted in part and denied in part.  Westcom admits that it has on occasion advertised in AFCA Magazine.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, and therefore denies the same.

36.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

37.    Admitted in part and denied in part.  Westcom admits that on occasion it has advertised in FNF Coaches Magazine.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to the fact that it does not reference any specific advertising, and therefore denies the same.

38.    Admitted.

39.    Paragraph 39 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.  Westcom further lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to the fact that does not reference any specific advertising, and therefore denies the same.

40.    Admitted in part and denied in part.  Westcom admits that, for a limited time, it used some ad copy which stated that its product was patented at a time before

Westcom's '551 Patent had issued, including at times when (i) the application for the '551 Patent was pending, (ii) when an earlier provisional patent application, filed on January 3, 2020, bearing number 62/956,797, was pending, and (iii) possibly when there was a prior provisional application relating to this subject matter, filed on or about December 28, 2018, pending.  It is admitted that this allegation, and Doc. 1-3 of Exhibit 3 to the Complaint, contain certain cited content that, for a period of time before the '551 Patent issued, was used by Westcom.  Doc. 1-3 speaks for itself and Westcom denies any attempt by CoachComm to selectively quote it or characterize it.  Consequently, the remaining parts of this allegation are denied.

41.    Admitted in part and denied in part.  Westcom admits that the ad which is found as part of Exhibit 4 to the Complaint, at Doc. 1-4, which was apparently printed out on October 28, 2021, 5 days before the '551 Patent issued, while the application for the '551 Patent was pending, contains the quoted passage, among other content.  The remaining averments of this allegation are denied.  Westcom is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph, as it does not know where Exhibit 4 came from with certainty, and therefore denies the same.

42.    Admitted in part and denied in part.  Westcom admits that, for a limited time, it used some ad copy which stated that its product was patented at a time before Westcom's '551 Patent had issued, including at times when (i) the application for the '551 Patent was pending, (ii) when an earlier provisional patent application, filed

on January 3, 2020, bearing number 62/956,797, was pending, and (iii) possibly when there was a prior provisional application relating to this subject matter, filed on or about December 28, 2018, pending. It is admitted that Doc. 1-5 of Exhibit 5 to the Complaint contains certain cited content that, for a period of time before the '551 Patent issued, was used by Westcom. Doc. 1-5 speaks for itself and Westcom denies any attempt by CoachComm to selectively quote it or characterize it. Consequently, the remaining parts of this allegation are denied. Westcom admits that for a limited time, including at time when the application for the '551 Patent was pending, including at a time after the U.S. Patent and Trademark Office had issued a Notice of Allowance, and the patent was in line to be issued, that it used some ads which stated that its product was patented at a time before Westcom's '551 Patent had actually issued, including the ad printed out on October 28, 2021, 5 days before the '551 Patent issued, which is found as part of Exhibit 6 to the Complaint. Doc. 1-6 speaks for itself and Westcom denies any attempt by CoachComm to selectively quote it or characterize it. Westcom further lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to the fact that, in part, the allegation does not reference specific advertising, and therefore Westcom denies the same.

43.    Admitted in part and denied in part. It is admitted that there was a prior provisional patent application filed by Frank Girardi that is not listed as a filing for which the '551 Patent claims priority. It is further admitted that this prior provisional

8

application was not assigned in writing to Westcom.  The remaining parts of this allegation are denied.

44.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, including but not limited to due to the fact that, in part, the allegation does not reference specific advertising or "advertising statements," or features, or tie them together, none of which are identified with clarity (e.g. "foregoing advertising . . ."), and therefore Westcom denies the same.

45.    Admitted in part and denied in part.  It is admitted that Westcom markets its ProCom X12 products in all parts of the United States, including in Alabama, and that it has marketed said products in magazines and on its website, among other places and activities.  The remaining parts of this allegation are denied.

46.    Admitted in part and denied in part.  It is admitted that Westcom markets its ProCom X12 products in all parts of the United States, including in Alabama, and that it has marketed said products to said schools.  The remaining parts of this allegation are denied.

47.    Admitted in part and denied in part.  It is admitted that Elba and Greenville High Schools are geographically in part of Alabama that the Middle District includes.  The remaining parts of this allegation are denied.

48.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

49.     Paragraph 49 contains legal conclusions to which no response is required. To the extent a response is required, denied.

50.     Admitted in part and denied in part.  Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, denied.  Westcom admits that it distributed communications suggesting that CoachComm customers could contact Westcom if they could no longer get service on CoachComm products.  The remaining parts of this allegation is denied.

51.     Admitted in part and denied in part.  It is admitted that Westcom has published comparison charts and that at least one such chart was used in or around "early 2019."  The remaining parts of this allegation are denied, including, but not limited to, due to the fact that CoachComm has not included in the body of the Complaint, or as an exhibit to the Complaint, the specific "First Comparison Chart" it is referencing herein.

52.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 51.

53.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 51.

54.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 51.

55.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 51.

56.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

57.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

58.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

59.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

60.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

61.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

62.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

63.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

64.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

65.     Denied.    Westcom repeats and incorporates by reference herein its response to paragraph 51.

66.     Admitted in part and denied in part.  It is admitted that CoachComm's counsel sent a March 8, 2019 letter to Westcom.  The letter speaks for itself, so Westcom denies CoachComm's attempts to selectively quote it or characterize it.  The remaining parts of this allegation are denied.

67.     Admitted in part and denied in part.  It is admitted that Westcom has used more than one comparison chart.  The remaining parts of this allegation are denied, including, but not limited to, due to the fact that CoachComm has not included in the body of the Complaint, or as an exhibit to the Complaint, the specific "Second Comparison Chart" it is referencing herein.

68.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 67.

69.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 67.

70.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 67.

71.     Denied.  Westcom repeats and incorporates by reference herein its response to paragraph 67.

72.     Admitted in part and denied in part.  It is admitted that CoachComm's counsel sent a March 16, 2020 letter to Westcom.  The letter speaks for itself, so Westcom denies CoachComm's attempts to selectively quote it or characterize it.  The remaining parts of this allegation are denied.

73.    Denied.

74.    Admitted in part and denied in part.  It is admitted that Twitter (now known as X) is a social media service.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining averments of this allegation, and therefore denies the same.

75.    Admitted in part and denied in part.  It is admitted that Westcom uses Twitter.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining averments of this allegation, and therefore denies the same.

76.    Admitted in part and denied in part.  It is admitted that a Tweet was posted under Westcom's name, as represented in Exhibit 7 to the Complaint, Doc. 1-7.  The remaining averments of this allegation are denied.

77.    Admitted in part and denied in part.  It is admitted that such a bar is visually present on Exhibit 7.  Westcom denies CoachComm's characterization of Exhibit 7, since Exhibit 7 is a document and speaks for itself.  Westcom denies the remaining parts of this allegation.

78.    Admitted in part and denied in part.  It is admitted that such a bar is visually present on Exhibit 7.  Westcom denies CoachComm's characterization of Exhibit 7, since Exhibit 7 is a document and speaks for itself.  Westcom  denies the remaining parts of this allegation.

79.    Admitted in part and denied in part.  It is admitted that such a bar is visually on Exhibit 7.  Westcom denies CoachComm's characterization of Exhibit

7, since Exhibit 7 is a document and speaks for itself. Westcom denies the remaining part of this allegation.

80.    Admitted in part and denied in part. It is admitted that such a bar is visually on Exhibit 7. Westcom denies CoachComm's characterization of Exhibit 7, since Exhibit 7 is a document and speaks for itself. Westcom denies the remaining parts of this allegation.

81.    Denied.

82.    Denied.

83.    Denied.

84.    Admitted in part and denied in part. It is admitted that Westcom tweeted the cited content. Westcom denies CoachComm's characterization of Exhibit 8, since Exhibit 8 is a document and speaks for itself. The remaining part of this allegation is denied.

85.    Westcom lacks sufficient information to form a belief as to the truth or falsity of the first sentence of this allegation, and therefore denies the same. As to the remaining parts of this allegation, denied.

86.    Admitted in part and denied in part. It is admitted that there was a video briefly on Westcom's website, having said title, which included the words "Made in U.S.A.". The remaining part of this allegation is denied.

87.    Denied.

88.    Admitted in part and denied in part.  It is admitted that in "early 2019," Westcom had listed its products as 500 mW rated.  The remaining averments of this allegation are denied.

89.    Admitted in part and denied in part.  It is admitted that Westcom has used more than one comparison chart and that it has indicated that the ProCom X12 and ProCom XLE have an output of up to 500mW.  The remaining parts of this allegation are denied, including, but not limited to, due to the fact that CoachComm has not included in the body of the Complaint, or as an exhibit to the Complaint, the specific "Second Comparison Chart" it is referencing herein.

90.    Admitted in part and denied in part.  It is admitted that as of the November 2021 filing of the Complaint, Westcom listed certain products as having 500 mW DTR power on its website. The remaining averments of this allegation are denied.

91.    Paragraph 91 contains legal conclusions to which no response is required. To the extent a response is required, denied.

92.    Paragraph 92 contains legal conclusions to which no response is required. To the extent a response is required, denied.

93.    Paragraph 93 contains legal conclusions to which no response is required. To the extent a response is required, denied.

94.    Paragraph 94 contains legal conclusions to which no response is required. To the extent a response is required, denied.

95.    Paragraph 95 contains legal conclusions to which no response is required. To the extent a response is required, denied.

96.    Paragraph 96 contains legal conclusions to which no response is required. To the extent a response is required, denied.

97.    Paragraph 97 contains legal conclusions to which no response is required. To the extent a response is required, denied.

98.    Admitted in part and denied in part. It is admitted that references to the FCC and its regulations have been used by Westcom. It is denied that Westcom "advertises" that the ProCom X12 and ProCom X12A are subject to FCC rules and regulations. The remaining averments of this allegation are admitted.

99.    Admitted.

100.    Paragraph 100 contains legal conclusions to which no response is required. To the extent a response is required, denied.

101.    Admitted.

102.    Admitted.

103.    Paragraph 103 contains legal conclusions to which no response is required. To the extent a response is required, denied.

104.    . Admitted in part and denied in part. It is admitted that the materials submitted for FCC testing were representative of the ProCom X12 and X12A products which Westcom sold at the time. It is denied that the reference to 500 mW is literally false, as Westcom conducted its own testing of its X12 beltpack product

for performance when exposed to multiple devices totaling 500 mW or more within the same frequency spectrum, and the Westcom product performed flawlessly. Westcom admits that the references to 500 mW in its advertising did not explain this context of Westcom's testing.

105. Paragraph 105 contains legal conclusions to which no response is required. To the extent a response is required, denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

111. Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

112. Denied.

113. Denied.

## COUNT I - DECLARATORY JUDGMENT OF NON-INFRINGEMENT

114. Westcom incorporates its answers to the preceding 113 paragraphs as if fully set forth herein.

115. Denied. This relates to a dismissed claim.

116. Denied. This relates to a dismissed claim.

117. Denied. This relates to a dismissed claim.

118.    Denied.  This relates to a dismissed claim.

119.    Denied.  This relates to a dismissed claim.

## COUNT II - DECLARATORY JUDGMENT OF INVALIDITY

120.    Westcom incorporates its answers to the preceding 119 paragraphs as if fully set forth herein.

121.    Denied.  This relates to a dismissed claim.

122.    Denied.  This relates to a dismissed claim.

123.    Denied.  This relates to a dismissed claim.

124.    Denied.  This relates to a dismissed claim.

125.    Denied.  This relates to a dismissed claim.

126.    Denied.  This relates to a dismissed claim.

127.    Denied.  This relates to a dismissed claim.

128.    Denied.  This relates to a dismissed claim.

129.    Denied.  This relates to a dismissed claim.

130.    Denied.  This relates to a dismissed claim.

131.    Denied.  This relates to a dismissed claim.

132.    Denied.  This relates to a dismissed claim.

133.    Denied.  This relates to a dismissed claim.

134.    Denied.  This relates to a dismissed claim.

135.    Denied.  This relates to a dismissed claim.

136.    Denied.  This relates to a dismissed claim.

137.   Denied.  This relates to a dismissed claim.

138.   Denied.  This relates to a dismissed claim.

139.   Denied.  This relates to a dismissed claim.

140.   Denied.  This relates to a dismissed claim.

141.   Denied.  This relates to a dismissed claim.

142.   Denied.  This relates to a dismissed claim.

143.   Denied.  This relates to a dismissed claim.

144.   Denied.  This relates to a dismissed claim.

145.   Denied.  This relates to a dismissed claim.

146.   Denied.  This relates to a dismissed claim.

### COUNT III - FALSE MARKING UNDER 35 U.S.C. § 292

147.   Westcom incorporates its answers to the preceding 146 paragraphs as if fully set forth herein.

148.   Paragraph 148 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

149.   Admitted.

150.   Admitted in part and denied in part.  It is admitted that there was a prior provisional patent application filed by Frank Girardi that is not listed as a filing for which the '551 Patent claims priority.  It is further admitted that this prior provisional application was not assigned in writing to Westcom.  The remaining parts of this allegation are denied..

151.   Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, including but not limited to due to the fact that, in part, the allegation does not reference specific advertising or "advertising statements," or features, or tie them together, none of which are identified with clarity, and therefore Westcom denies the same.

152.   Admitted.

153.   Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

154.   Admitted in part and denied in part.  It is admitted that Westcom did not own an issued patent prior to November 2, 2021 on its ProCom X12 platform products.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to whether another held such a patent, and therefore denies the same.

155.   Admitted in part and denied in part.  It is admitted that Westcom knew it did not own an issued patent prior to November 2, 2021 on its ProCom X12 platform products.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining part of this allegation, including but not limited to whether another held such a patent, and therefore denies the same.

156.   Denied.

157.   Denied.

158.   Denied.

159.    Denied.

160.    Denied.

### COUNT IV - FALSE ADVERTISING REGARDING THE PATENT STATUS OF WESTCOM PRODUCTS UNDER SECTION 43 OF THE LANHAM ACT-15 U.S.C. § 1125

161.    Westcom incorporates by reference its answers to the preceding 160 paragraphs, as if fully set forth herein.

162.    Paragraph 162 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

163.    Admitted.

164.    Admitted in part and denied in part.  It is admitted that there was a prior provisional patent application filed by Frank Girardi that is not listed as a filing for which the '551 Patent claims priority.  It is further admitted that this prior provisional application was not assigned in writing to Westcom.  The remaining parts of this allegation are denied.

165.    Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, including but not limited to due to the fact that, in part, the allegation does not reference specific advertising or "advertising statements," or features, or tie them together, none of which are identified with clarity (e.g., . . . foregoing advertising statements . . ."), and therefore Westcom denies the same.

166.    Admitted.

167.   Westcom lacks sufficient information to form a belief as to the truth or falsity of this allegation, and therefore denies the same.

168.   Admitted in part and denied in part.  It is admitted that Westcom did not own an issued patent prior to November 2, 2021 on its ProCom X12 platform products.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to whether another held such a patent, and therefore denies the same.

169.   Denied.

170.   Denied.

171.   Denied.

172.   Admitted in part and denied in part.  It is admitted that much of Westcom's advertising occurred in interstate commerce.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to due to the fact that, in part, the allegation does not reference specific advertising or "advertising statements," or features, or tie them together, none of which are identified with clarity (e.g., . . . foregoing statements . . ."), and therefore Westcom denies the same.

173.   Denied.

174.   Denied.

175.   Denied.

## COUNT V - VIOLATION OF ALA. CODE 8-12A-1 ET SEQ.

176.   Westcom incorporates its answers to the preceding 175 paragraphs as if fully set forth herein.

177.   Denied.  This relates to a dismissed claim.

178.   Denied.  This relates to a dismissed claim.

179.   Denied.  This relates to a dismissed claim.

180.   Denied.  This relates to a dismissed claim.

181.   Denied.  This relates to a dismissed claim.

182.   Denied.  This relates to a dismissed claim.

183.   Denied.  This relates to a dismissed claim.

184.   Denied.  This relates to a dismissed claim.

185.   Denied.  This relates to a dismissed claim.

186.   Denied.  This relates to a dismissed claim.

187.   Denied.  This relates to a dismissed claim.

188.   Denied.  This relates to a dismissed claim.

## COUNT VI - FALSE ADVERTISING REGARDING COACHCOMM
## AND WESTCOM PRODUCTS UNDER SECTION 43
## OF THE LANHAM ACT - 15 U.S.C. § 1125

189.   Westcom incorporates its answers to the preceding 188 paragraphs as if fully set forth herein.

190.   Denied.

191.   Westcom incorporates by reference its responses to the allegations in Section H of the Complaint.  Westcom further denies this allegation.

192.   Westcom incorporates by reference its responses to the allegations in Section H of the Complaint.  Westcom further denies this allegation.

193.   Paragraph 193 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

194.   Paragraph 194 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

195.   Paragraph 195 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

196.   Admitted in part and denied in part.  It is admitted that much of Westcom's advertising and sales occurred in interstate commerce.  Westcom lacks sufficient information to form a belief as to the truth or falsity of the remaining parts of this allegation, including but not limited to due to the fact that, in part, the allegation does not reference specific advertising or "statements," or features, or tie them together, none of which are identified with clarity (e.g., . . . the statements . . ."), and therefore Westcom denies the same.

197.   Paragraph 197 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

198.   Denied.

24

199.    Paragraph 199 contains legal conclusions to which no response is required. To the extent a response is required, it is denied.

WHEREFORE, Westcom prays that the Court:

a)    Enter judgment in favor of Westcom and against CoachComm that Westcom has not violated 35 U.S.C. § 292;

b)    Enter judgment in favor of Westcom and against CoachComm that Westcom has not violated the Lanham Act, 15 U.S.C. § 1125;

c)    That the Court find this case is exceptional within the meaning of 35 U.S.C. § 285 and award Westcom its reasonable attorneys' fees in this action;

d)    That the Court find this case is exceptional within the meaning of 15 U.S.C. § 1117 and award Westcom its reasonable attorneys' fees in this action;

e)    That CoachComm be ordered to pay pre-judgment and post-judgment interest on all damages awarded to Westcom;

f)    That all costs be taxed against CoachComm; and

g)    That Westcom be granted such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Subject to the response above, Westcom alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below,

25

subject to its responses above, Westcom specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery. Westcom reserves the right to amend this Answer and Affirmative Defenses, with additional defenses as further information is obtained in discovery. Westcom asserts the following defenses without prejudice to the denials in this Answer and Counterclaim, and without admitting any allegations of the Complaint not expressly admitted.

### First Defense – Failure to State a Claim Upon Which Relief Can Be Granted

200.    CoachComm fails to state claims against Westcom for which relief can be granted.

### Second Defense – No Personal Jurisdiction

201.    This Court lacks personal jurisdiction over Westcom with respect to the three remaining Counts in CoachComm's Complaint (Counts III, IV and VI).

### Third Defense – No Subject Matter Jurisdiction

202.    This Court lacks subject matter jurisdiction over Counts III, IV and VI, as CoachComm has suffered no injury-in-fact fairly traceable to any violation of either the Lanham Act or the Patent Act by Westcom, as alleged in the Complaint.

### Fourth Defense – Claims Are Barred By Equity

203.    CoachComm's claims are barred, in whole or in part, or should be reduced, under the principles of equity, including without limitation laches, waiver, estoppel and/or unclean hands. CoachComm was or should have been aware of

Westcom's advertising practices for a sufficiently long period of time as to bar any claims based on the same, including but not limited to those set forth in Counts III, IV and VI of the Complaint.

### Fourth Defense – Statute of Limitations

204.   CoachComm's claims are barred, in whole or in part, or should be reduced, as a result of applicable statutes of limitation, including, without limitation specific statutes of limitation for analogous claims made in Alabama

### Fifth Defense - No Violation of the Lanham Act

205.   Westcom has not engaged in false advertising. The alleged statements that CoachComm contends support a claim of false advertising are not false or misleading and/or have not deceived and do not have the capacity to deceive potential customers.

### Sixth Defense – No Violation of Patent Act

206.   Westcom has not falsely marked its products with the required purpose of deceit.

### Seventh Defense - No damages

207.   Without admitting that the Complaint states a claim, CoachComm has suffered no damage in any amount, manner or at all by reason of any act alleged against Westcom in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

## Eighth Defense - Lack of irreparable harm

208. CoachComm's claims for injunctive relief are barred because CoachComm cannot show that it will suffer any irreparable harm from Westcom's actions.

## Ninth Defense - Adequacy of remedy at law

209. The alleged injury or damage suffered by CoachComm, if any, would be adequately compensated by damages. Accordingly, CoachComm has a complete and adequate remedy at law and is not entitled to seek equitable relief.

WHEREFORE, Westcom respectfully submits that this Court deny all of the relief sought by CoachComm, find that CoachComm's claims are barred by one or more defenses and affirmative defenses, enter judgment against CoachComm and dismiss with prejudice its Complaint, find this case to be exceptional within the meaning of the Patent Act and the Lanham Act, against CoachComm, and grant Westcom all of its costs of this action, attorney's fees, expenses, damages, and such other relief as may be just and proper.

## COUNTERCLAIM

1. Plaintiff Westcom Wireless, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and maintains a principal place of business at 2773 Leechburg Road, Lower Burrell, Pennsylvania 15068.

2.     Defendant CoachComm, LLC is a limited liability company organized and existing under the laws of the State of Alabama and maintains a principal place of business at 205 Technology Parkway, Auburn, Alabama 36830.

3.     At all material times, with respect to the allegations hereafter, CoachComm, LLC has acted on its own and/or in concert or participation with its dealers, representatives and/or other agents under its direction and control (all of the foregoing collectively referred to hereafter as "CoachComm," unless otherwise indicated).

4.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1121 because this complaint asserts claims arising under federal law, including Section 43 of the Lanham Act, 15 U.S.C. §1125. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over CoachComm.

6.     This Court is a proper venue for the claims set forth hereafter, under 28 U.S.C. §1391(a), (b) and (c).

7.     This Court also has personal jurisdiction over CoachComm because CoachComm resides in this District and filed its own suit in this District, and intentionally directed false and misleading advertising and marketing statements

regarding its Cobalt Plus products and regarding Westcom and its ProCom products and services, into this District, causing harm to Westcom in this District and elsewhere.

8.      Westcom   designs,   develops   and   sells   innovative   headset communication systems and devices, and provides associated services in support of same. Westcom's founder, Frank Girardi, has been designing communications systems since at least 1982.

9.      On November 2, 2021, Westcom received U.S. Patent No. 11,165,551 (the '551 Patent), naming Frank Girardi as inventor, for "COMMUNICATION SYSTEM AND FULL DUPLEX TRANSCEIVER AMPLIFIER ASSEMBLY THEREFORE, AND ASSOCIATED METHOD, a copy of which is attached hereto, incorporated by reference herein, and marked as Exhibit "A."

10.     The '551 Patent was based on a Provisional Patent Application filed on January 2, 2020.  The '551 Patent discloses and claims a variety of improvements in communication technology. Because the '551 Patent's provisional application was filed on January 2, 2020, this shows that Westcom was in possession of the technology disclosed in the '551 Patent at least as early as January 2, 2020.

11.     Among some of the important features described in the '551 Patent are Logical Data Channel Assignments, Floating User IDs, a Single Device Providing Coach to Coach and Coach to Player Communications, External Remote Voltage Control and Automatic Transfer of Control "WILL.". Some of these features

contribute to why Westcom's ProCom products and services have important advantages over communications systems and products sold by its competitors.

12. In connection with its headset devices and communication systems, Westcom coordinates and conducts marketing, engineering, operations, sales, customer and technical service, and fulfilment out of its facilities in Lower Burrell, Pennsylvania.

13. Westcom specializes in providing headset communications devices to professional, collegiate, and scholastic football teams for coaching purposes and player applications. Westcom's football headset devices and communication systems include the ProCom™ branded headset system ("ProCom System").

14. Westcom markets and sells its ProCom System to football coaching staffs and those involved in purchasing at all levels, and to other commercial entities.

15. Upon information and belief, CoachComm has marketed and sold headset communications products and systems, including its Cobalt Plus system, throughout the United States, including within this District and elsewhere in Alabama.

16. CoachComm sells its headset communications products and systems, including its Cobalt Plus system, to football teams at all levels, in direct competition with Westcom's headset communications products and systems, including Westcom's ProCom System.

17.    Owing in part to the inventions disclosed and claimed in the '551 Patent, Westcom has the newest technology in the field, with significant performance advantages over some competitive products.

18.    Thus, Westcom is one of CoachComm's principal competitors in the market for football headset communications products and systems.

19.    CoachComm is currently the largest competitor in the football headset market, while Westcom is a much smaller concern.

20.    New technology disclosed and claimed in Westcom's '551 Patent threatens CoachComm's significant market share advantage over Westcom.

21.    CoachComm is aware of this and therefore has resorted to the false and misleading advertising described herein in an effort to maintain its larger market share, albeit through unfair and unlawful means.

22.    Because there are only a few companies who manufacture and sell football headset communication products and systems, CoachComm is very familiar with the products and systems manufactured, marketed and sold by Westcom, including the ProCom System, and is knowledgeable of the characteristics, qualities, features and capabilities of the ProCom System.

23.    CoachComm's advertising of its Cobalt Plus system includes information provided on its website www.coachcomm.com, which is available to consumers throughout the United States, including those in this District and elsewhere in Alabama.

24.    On information and belief, actual and prospective customers have accessed CoachComm's website at issue from multiple states, including from this District and from elsewhere in Alabama.

25.    In the course of advertising its Cobalt Plus system, CoachComm has made various false and/or misleading statements of fact regarding the nature, characteristics, qualities and geographic origin of its Cobalt Plus system and of Westcom's ProCom products and systems, and associated services.

26.    For instance, and without limitation, CoachComm makes the following representations on its website www.coachcomm.com about its Cobalt Plus system supposedly being ***"the only system that can***:

- Alleviate press box glass problems;

- Eliminate Wi-Fi interference;

- Deliver Comfort and on/off mic boom with the D-1 SmartBoom Pro Headset;

- Provide exceptional audio quality to hear in LOUD environments;

- Offer unique Player Receiver compatibility for enhanced teaching during practice and workouts."

(See "Why Cobalt Plus" page from the www.coachcomm.com website, attached hereto, incorporated by reference herein, and marked as Exhibit "B").

27.    The foregoing statements are false because Westcom's products and systems, and associated services, also provide these same features, as well as others.

28.    In addition to publishing these representations on its webpage, CoachComm has, on its own and/or through others acting in concert with the company, directed emails to be delivered to professional, college and high school football coaches and other amateur and professional football coaches, which emails have included a snapshot of this webpage and/or have otherwise made the same representations about the Cobalt Plus system as depicted on this webpage.

29.    These emails were sent to and received by football coaches located within this District and elsewhere. Alabama.

30.    Since CoachComm has caused the foregoing representations to appear in advertising and in emails, CoachComm has known that it has intentionally injected into the market, including in this District, false and misleading representations regarding its Cobalt Plus system and about Westcom's products and systems, and associated services.

31.    Specifically, CoachComm has known that its Cobalt Plus system is not the only system which has the characteristic, qualities, features and capabilities claimed.

32.    Contrary to CoachComm's false and misleading advertising and other representations, Westcom's ProCom System alleviates press box glass problems, eliminates Wi-Fi interference, delivers comfort and on/off mic boom, provides exceptional audio quality to hear in loud environments and offers player receiver compatibility for enhanced teaching during practice and workouts.

33.    CoachComm also represents on its website that CoachComm's Cobalt Plus products are "designed, manufactured and serviced in Alabama."

34.    Important parts of the Cobalt Plus products/systems are manufactured outside of the United States.

35.    Purchasers of football headset communications products and systems and associated services consider near perfect reliability of these items to be paramount to the success of their football teams, programs, winning records and, in the cases of coaches, their job security. Thus, when CoachComm plants seeds of doubt about the reliability of these items from Westcom, it has a direct, adverse effect on the marketability of Westcom's products and services.

36.    Because they can impact the outcome of football games, the overall record of a football team, and the success/failure of the football program and those working for it, these performance capabilities and features which CoachComm falsely claims are unique to the Cobalt Plus system are extremely important to purchasers of football headset communications products and systems, and associated services.

37.    These performance capabilities and features are therefore material to purchasing decisions made by football coaches and other customers targeted by both Westcom and CoachComm. On information and belief, CoachComm makes these false and misleading statements specifically because they are material to purchasing decisions.

38.    Through these false and misleading statements, CoachComm intends to and does adversely influence purchasing decisions by football programs to Westcom's detriment. On information and belief, CoachComm's false and misleading statements set forth above have caused and/or will cause Westcom irreparable harm, unless enjoined.

39.    Additionally, on information and belief, CoachComm and others acting on concert have made other false and misleading statements related to Westcom and its products and services, including the ProCom System. These statements include at least the following:

- Westcom is a brand new company and its product has not been tested anywhere;

- Westcom's ProCom System has a five-second delay in delivering communications between coaches because it uses inferior technology and cannot send the signal fast enough;

- Westcom's ProCom System does not have the signal strength to reach from the press box to the sideline in the largest stadiums;

- Westcom's ProCom System does not work through press box glass.

- Sideline replay systems will interfere with ProCom's headsets.

- Westcom does not, and will not, answer the phone when the customer has problems because it does not have a good customer support system.

40.     These statements about Westcom and its products and services are literally false.

41.     The foregoing false statements made by CoachComm about Westcom and its products/services pertain to features and capabilities that are very important to purchasers of football headset communications products and systems and, as such, almost certainly have affected and will continue to affect their decisions on which system to purchase, Westcom's or CoachComm's, unless enjoined. CoachComm makes these false and misleading statements specifically because they are material to purchasing decisions.

42.     Consequently, by making these intentionally false and misleading statements, CoachComm has adversely influenced purchasing decisions by football programs, and/or those who make purchasing decisions for them, to Westcom's detriment.

43.     Because of its longtime involvement in selling football communications systems, and its knowledge of how Westcom's products and services work, CoachComm knows that these statements are false and misleading. These false and misleading statements have caused and/or will cause Westcom irreparable harm, unless enjoined.

44.     CoachComm intentionally markets its Cobalt Plus system to football programs located in this District, in direct competition with Westcom. Such marketing includes, but is not limited to, advertisements on its website

www.coachcomm.com and sending emails directly to coaches located in this District.

45.    Westcom routinely markets and offers to sell its headset communication products and services, including its ProCom System, to football programs located within this District and elsewhere.

46.    CoachComm has unfairly competed with Westcom by falsely describing certain capabilities and features of its own Cobalt Plus system as being the "only" communication system to have such capabilities and features, when in fact Westcom's products and systems, and associated services, including the ProCom System, have the same capabilities and features and more.

47.    As a result, CoachComm has caused harm to Westcom and the value of Westcom's products and systems, goodwill, intellectual property, brand, research and development, and reputation. The harm to Westcom, though severe, cannot be calculated with precision and thus constitutes irreparable harm.

48.    CoachComm's dissemination of these false and misleading statements harms both Westcom and actual and prospective customers.

49.    Unless enjoined, CoachComm will continue its false and misleading advertising and statements, and Westcom will continue to suffer irreparable harm in connection with its business of providing high quality headset communications products and systems, and associated services, to football programs in this District and throughout the United States.

50.    Westcom incorporates by reference paragraphs 1 through 49 as if the same were fully set forth at length herein.

51.    The numerous false and misleading statements refenced above which CoachComm has made about its Cobalt Plus System/products in comparison to Westcom's ProCom products/services, including the ProCom System, in its advertising and otherwise, constitute a violation of Section 43 of the Lanham Act (15 U.S.C. §1125), and as such are actionable and prohibited by law.

52.    The false and misleading advertising and representations were made in interstate commerce, on CoachComm's website, through email, and by CoachComm, and pertained to the nature, characteristics, qualities, features, capabilities and geographic origin of the CoachComm products, including the Cobalt Plus system, and of the Westcom products/services. The statements were literally false, misleading, material to purchasing decisions, and highly likely to confuse purchasers of football headset communication devices and systems about the viability of Westcom and its products and systems, and associated services.

53.    The false advertising and representations made by and/or on behalf of CoachComm were made with a specific intent to deceive, and either actually deceived, or had the tendency to deceive, purchasers of football headset communications products and systems, and associated services, because they communicated to purchasers critical performance information that was false and/or

misleading about the nature, characteristics, qualities, features, capabilities and geographic origin of both CoachComm's and/or Westcom's products/services.

54.    This false and misleading information made it appear that CoachComm's products are superior to Westcom's products when, in fact, they are not.

55.    To the contrary, Westcom's products and systems, and associated services, have all of the same attributes to those CoachComm touts for its Cobalt Plus system, plus additional new attributes that make Westcom's products and systems more desirable to customers than those of CoachComm.

56.    The issuance of the '551 Patent represents a determination by the U.S. Patent and Trademark Office that Westcom's products and systems are novel and unobvious as compared to prior products and systems that have been patented.

57.    As one of CoachComm's principal competitors, Westcom has been injured by CoachComm's false and misleading advertising and statements, and has suffered irreparable harm, and will likely suffer future irreparable injuries from them, unless enjoined.

58.    CoachComm's false and misleading statements have injured Westcom's reputation, brand and goodwill in the market.

59.    CoachComm's false and misleading statements were made "in commerce" within the meaning of 15 U.S.C. §1125 by their inclusion inter alia on

CoachComm's website and in emails directed to football coaches, including coaches within this District.

60.     CoachComm's violation of 15 U.S.C. §1125 has been willful, intentional, malicious, and in bad faith, as CoachComm is and has been fully aware that Westcom's products and systems, and associated services, have the same capabilities and features as CoachComm's Cobalt Plus, and even have more than CoachComm's products and systems in several respects.

61.     Despite this awareness, CoachComm has knowingly made false and misleading advertising statements regarding its Cobalt Plus system, and about Westcom's products and systems, and associated service, including but not limited to Westcom's ProCom System, all with a specific intent to harm Westcom.

## JURY DEMAND

Westcom demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Westcom respectfully prays as follows:

a)      That the Court enter judgment in favor of Westcom and against CoachComm, pursuant to 15 U.S.C. §1116 and Rule 65, F.R.C.P., and enjoin and restrain CoachComm, its officers, agents, employees, and attorneys, and all others acting in concert or participation with any of the foregoing, from making any further false or misleading statements regarding the nature, qualities, characteristics,

features, capabilities and geographic origin of CoachComm's products, including but not limited to the Cobalt Plus system;

b)      That the Court enter judgment in favor of Westcom and against CoachComm, pursuant to 15 U.S.C. §1116 and Rule 65, F.R.C.P., and enjoin and restrain CoachComm, its officers, agents, employees, and attorneys, and all others acting in concert or participation with any of the foregoing, from making any further false or misleading statements regarding the nature, qualities, characteristics, features and capabilities of Westcom's products and systems, and associated services, including but not limited to the ProCom System, including, but not limited to, by preventing each of them from continuing to falsely and misleadingly represent or imply that: Westcom's devices and systems do not alleviate press box glass problems; eliminate Wi-Fi interference; deliver comfort and on/off mic boom; provide exceptional audio quality to hear in loud environments; or offer player receiver compatibility for enhanced teaching during practice and workouts; ProCom/Westcom is a brand new company and its products have not been tested anywhere; the ProCom System has a five-second delay in delivering communications because Westcom uses inferior technology that cannot send the signal fast enough; the ProCom System does not have the signal strength to reach from the press box to the sideline in the largest stadiums; the ProCom System does not work through press box glass; sideline replay systems will interfere with ProCom's headsets, and/or Westcom has nobody available to answer the phone

when you have problems because they do not have a good customer support system; and

c)    That Westcom be granted such other and further relief as the Court deems just and proper.

Respectfully submitted,

MARCUS & SHAPIRA LLP

Dated:  December 29, 2023          */s/ Leland P. Schermer*
Leland Schermer, PA I.D. No. 47283
Paul M. Mannix, PA I.D. No. 76225
Brian W. Castello, PA I.D. No. 318609
MARCUS & SHAPIRA LLP
301 Grant Street, 35th Floor
One Oxford Centre
Pittsburgh, PA 15219-6401
Telephone:  (412) 471-3490
Facsimile:  (412) 391-2315
schermer@marcus-shapira.com
mannix@marcus-shapira.com
castello@marcus-shapira.com

Christopher W. Weller, WEL202
Carla C. Penton, COL096
CAPELL & HOWARD, P.C.
150 South Perry Street
P.O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
chris.weller@chlaw.com
carla.penton@chlaw.com

Attorneys for Defendant,
Westcom Wireless, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 29, 2023, I caused a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaim to Plaintiff's Complaint to be served via email, by the ECF filing/service system, on the following counsel for Plaintiff:

Benn C. Wilson, Esquire
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue N
Birmingham, AL 35203
Email: bcwilson@bradley.com

Jonathan C. "Rudy" Hill, Esquire
Lillie A. Hobson, Esquire
Bradley Arant Boult Cummings, LLP
RSA Dexter Avenue Building
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
Email: rhill@bradley.com
Email: lhobson@bradley.com

Kristina Reliford, Esquire
Bradley Arant Boult Cummings, LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Email: kreliford@bradley.com

MARCUS & SHAPIRA LLP

*/s/ Leland P. Schermer*
Leland Schermer, PA I.D. No. 47283
MARCUS & SHAPIRA LLP
301 Grant Street, 35th Floor
One Oxford Centre
Pittsburgh, PA 15219-6401
Direct Dial: (412) 338-3990
Facsimile: (412) 391-2315
Email:    schermer@marcus-shapira.com

Attorneys for Defendant,
Westcom Wireless, Inc.